**Robert G. COURTNEY, Plaintiff–Appellant,**

v.

**BIOSOUND, INC., Defendant–Appellee.**

**No. 93–3733.**

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1994.

Decided Dec. 13, 1994.

415

Raymond J. Hafsten, Jr. (argued), Michael J. Cork, Indianapolis, IN, for plaintiff-appellant.

Hudnall A. Pfeiffer, Todd M. Nierman (argued), Baker & Daniels, Indianapolis, IN, for defendant-appellee.

Before CUDAHY and MANION, Circuit Judges, and GORDON, District Judge.*

CUDAHY, Circuit Judge.

Robert G. Courtney brought this action against his former employer, Biosound, Inc., under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626(c), alleging that Biosound failed to rehire him because of his age. The district court granted summary judgment in favor of Biosound, concluding that Courtney failed to produce evidence from which a finder of fact could reasonably conclude that the reasons proffered for the refusal to rehire were pretextual. We reverse and remand.

## I. Background

Biosound markets ultrasound, cardiovascular imaging and electrocardiography equipment that is manufactured by its Italian parent corporation Esaote Biomedica (Esaote) and which is subject to classification and regulation by the Food and Drug Administration (FDA). Courtney began his employment with Biosound in 1979 when he was 49 years old. He was promoted to Manager of Quality Assurance and Regulatory Affairs sometime between 1981 and 1983. As for regulatory affairs, according to Biosound, Courtney was responsible for preparing, filing and maintaining submissions (such as 510(k) notifications)[1] to the FDA for the Class II ultrasound devices marketed by Biosound.[2] There is a dispute about whether Courtney was also responsible for Class III devices.[3]

Courtney continued to work for Biosound when its ownership changed in January 1989, but was terminated 10 months later as part of a reduction in force. During the month prior to Courtney's termination, there were discussions among Biosound's executives about Courtney's age and health. When discussing Courtney's severance, the management asked Courtney to sign a general release, which included release of ADEA claims. Although Courtney claims that he was the only one asked to sign such a release, Biosound's then human resources manager could not recall whether other employees terminated in the reduction in force were asked to sign a release. Biosound eventually gave Courtney his severance payment without requiring him to sign the release.

After Courtney was terminated, Biosound's president, Gerald Richardson, took over the company's regulatory affairs. Richardson engaged Courtney as a regulatory consultant on several occasions during the eight to nine months following Courtney's termination. The last time was in August 1990 when one of Biosound's devices was impounded because of Biosound's failure to make a required FDA filing. Courtney's submission resolved the immediate problem but was rejected later by the FDA, which instructed Biosound to cease its introduction of the product in question. Biosound then engaged another outside consultant, William McKay, to complete the necessary submission to the FDA. Biosound continued to retain McKay, who then reviewed and reorganized the regulatory files created by Courtney.

In February 1991, Biosound took over regulatory affairs work for all of Esaote's products. In this connection, Biosound solicited applications for the position of Manager of Regulatory Affairs. Biosound's president, Richardson, interviewed four candidates including Courtney, who was 61 years old at the time. Richardson selected one candidate, 28-year-old Wayne Nethercutt, to meet

---

* The Honorable Myron L. Gordon, District Judge for the Eastern District of Wisconsin, sitting by designation.

1. A 510(k) submission is a premarket notification to the FDA for a new or modified product which is substantially equivalent to a product already classified by the FDA.

2. A Class II device is a device about which there is sufficient information to establish a performance standard to provide reasonable assurance of its safety and effectiveness. See 21 C.F.R. § 860.3.

3. A Class III device is one about which insufficient information exists to establish a performance standard to provide reasonable assurance of its safety and effectiveness, and which is life supporting or life sustaining, or for a use which is of substantial importance in preventing impairment of human health, or which presents a potential unreasonable risk of illness or injury. See 21 C.F.R. § 860.3.

with other Biosound executives. Nethercutt has a biology degree and had worked with an orthopedic manufacturer as a clinical affairs specialist and coordinator for two and a half years. In addition to having some experience in filing 510(k) applications with the FDA, Nethercutt stated in his resume that he was familiar with regulations governing cardiovascular devices. Garrett, an executive who participated in Nethercutt's interviews, noted his impression of Nethercutt as, among other things, "young and [has] good growth potential." Biosound hired Nethercutt. Courtney filed this lawsuit, alleging that Biosound's failure to rehire him was motivated by his age. The district court granted summary judgment in favor of Biosound, and Courtney appeals.

## II. Analysis

We review a grant of summary judgment *de novo, Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), viewing the record and the inferences drawn from it in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). We will affirm if there is no genuine issue of material fact such that judgment is proper as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The district court's decision is proper, "only if, had the record before that court been the record of a complete trial, the defendant would have been entitled to a directed verdict." *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir.1993); *Billish v. City of Chicago,* 989 F.2d 890, 892 (7th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 290, 126 L.Ed.2d 240 (1993). Where the party opposing a motion for summary judgment bears the burden of proof on an issue, he or she must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact requiring trial. *Sarsha,* 3 F.3d at 1041. The nonmoving party's own affidavit or deposition can constitute affirmative evidence to defeat a summary judgment motion. *Id.; Wilson v. Williams,* 997 F.2d 348, 351 (7th Cir.1993). Further, the summary judgment standard is applied "with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Robinson v. PPG Indus., Inc.,* 23 F.3d 1159, 1162 (7th Cir.1994) (quoting *Sarsha,* 3 F.3d at 1038). Because evidence directly supporting a claim of intentional discrimination is rare, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.

In order to prove discrimination under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which has been extended to ADEA cases, *see Shager v. Upjohn Co.,* 913 F.2d 398, 400 (7th Cir.1990), the employee must first establish a prima facie case to create a rebuttable presumption of discrimination. The burden then shifts to the employer to articulate legitimate, nondiscriminatory reasons for the challenged employment action. *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1122 (7th Cir.1994). If the employer is successful, the presumption dissolves, and the burden of production shifts back to the employee. *Id.* The employee bears the ultimate burden of proving that age was the determining factor in the employer's action. *See Saint Mary's Honor Ctr. v. Hicks,* — U.S. —, — — —, 113 S.Ct. 2742, 2747–49, 125 L.Ed.2d 407 (1993). However, for purposes of defeating a summary judgment motion, the employee need only produce evidence from which a rational fact-finder could infer that the company's proffered reasons were pretextual. *Anderson,* 13 F.3d at 1124; *Shager,* 913 F.2d at 401; *see also Visser v. Packer Eng'g Associates, Inc.,* 924 F.2d 655, 660 (7th Cir.1991) (en banc).

Because Biosound concedes on appeal that Courtney has established a prima facie case for age discrimination, the key inquiry here is whether Courtney has produced evidence from which a rational juror could infer that Biosound was untruthful about its proffered reasons for not rehiring Courtney. That is, whether Courtney has offered evidence showing either that a discriminatory reason more likely motivated Biosound's decision or that Biosound's proffered explanations are unworthy of credence. *See Texas Dep't of*

*Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *Robinson*, 23 F.3d at 1163; *Oxman v. WLS–TV*, 846 F.2d 448, 456 (7th Cir.1988); *La Montagne v. American Convenience Prod., Inc.*, 750 F.2d 1405, 1409 (7th Cir. 1984).

We agree with the district court that the first category of evidence on which Courtney has relied to establish pretext is insufficient. In proving that Biosound's adverse decision was more likely motivated by his age, Courtney relied on the following direct evidence: 1) Garrett's interview notes characterizing Nethercutt as being "young and [having] good growth potential;" 2) the discussions by the management of Courtney's age and health prior to Courtney's termination; 3) the fact that Courtney was asked to sign a release; and 4) a chart of Biosound's 1987–92 hirings, which supposedly shows that Biosound was reducing the composite age of its workers.

 Garrett's remark as to Nethercutt's youth is not probative of Biosound's discriminatory intent not to hire Courtney. Garrett's interview notes of Nethercutt stated: "[g]ood discussion, speaks well, neat, shares a philosophy of 'team' approaches, seems to have a good grasp on FDA procedures. Seems well motivated—says he enjoys interaction with FDA, et cetera, on regulatory affairs matters.—Young, good growth potential—." Because "young" was grouped with "good growth potential," the notation could lead a reasonable fact-finder to infer that Garrett considered Nethercutt's youth as one of his positive attributes and that Garrett preferred a young candidate over an old one. *Cf. Parker v. Federal National Mortgage Ass'n*, 741 F.2d 975, 980 (7th Cir. 1984) (statement that employee "was one of the younger members of the Regional staff who, with the others, comprise a strong asset base that portends well for the Corporation" is on its face a neutral statement). However, the remark is relevant only if Garrett is a decision maker with respect to rehiring Courtney or if Garrett's role in the selection process was such that Garrett's possible discriminatory intent could reasonably be attributed to the primary decision maker, Rich-

ardson. *See La Montagne*, 750 F.2d at 1412; *see also Oxman*, 846 F.2d at 456–57 (where an inferior officer carried out the discharging officer's decision to discharge plaintiff, the inferior officer's discriminatory statement made while executing the order could reasonably be attributed to the discharging officer). That is not the case here. Before Garrett commented on Nethercutt's youth, Richardson had already made a decision adverse to Courtney—he invited only Nethercutt back for a second interview. There is no indication that Garrett knew about the other candidates. Thus, while Garrett testified that he was not to "rubber-stamp" the company president's selection but was to tell him what he thought of Nethercutt, a fair inference is that Richardson merely wanted to have Garrett's contribution in confirming the decision to hire Nethercutt. *See Aungst v. Westinghouse Electric Corp.*, 937 F.2d 1216, 1220 (7th Cir.1991) (sole decision maker consulted discharged employee's immediate supervisors in making the decision to terminate). It follows that Garrett's discriminatory intent, if any, may not be attributed to Richardson.

 Similarly, Biosound executives' discussions of Courtney's age and health immediately prior to the reduction in force in 1989 are not probative of Biosound's discriminatory intent not to rehire him in 1991. The company's then human resources manager testified that prior to Courtney's termination, there were concerns over Courtney's age and health as related to the need for eliminating his job. The human resources manager stated: "the concern was for [Courtney's] general welfare. This was not an easy decision on our part, on Biosound's part, and there was a concern for—for him occupying that particular position that needed to be cut...." Apparently, Courtney had suffered a heart attack in 1987. As the district court correctly found, a reasonable inference from the human resources manager's testimony is that the discussions of Courtney's age and health militated against terminating Courtney. Given the context of those discussions, no reasonable juror could find the discussions probative of Biosound's discriminatory intent to eliminate Courtney's job, much less a discriminatory intent not to hire him in 1991.

■ Courtney next argues that Biosound's undisputed attempt to have him sign a general release in 1989 and its subsequent failure to produce the document show that Biosound was motivated by his age in not rehiring him. According to Courtney, this evidence is particularly relevant because he was the only terminated employee asked to sign a release. Yet, it is unclear whether the other employees terminated during the reduction in force were in the protected group (i.e. 40 and above). Nor has it been established that Courtney was the only one asked to sign a release. In any event, this court has said that no inference of guilt can be drawn from a company's sensitivity to its potential liability under the age discrimination law when discharging a protected older worker, unless "the innocuous evidence of age awareness" is made significant by other evidence that would give rise to such an inference. *See Partington v. Broyhill Furniture Industries, Inc.,* 999 F.2d 269, 271 (7th Cir.1993) (employee's release of age discrimination claims coupled with employer's "purging" of the files of its terminated employees—the very files that would be expected to contain the evidence most relevant to such a suit, gave rise to inference that employer was destroying incriminating evidence when most of those employees whose files were destroyed were over the age of 40 and were potential age discrimination plaintiffs). Courtney argues that Biosound's request to have him sign a release is significant when coupled with the fact that Biosound failed to produce the document in discovery. Although Biosound does not explain its failure to produce a copy of the release, it may not be as significant as Courtney claims because he had received his severance payment without signing the release. The more fundamental problem with Courtney's reliance on the events surrounding his termination is that a reasonable juror would have to infer not only that Courtney's discharge in 1989 was motivated by his age, but also that the same discriminatory intent determined his fate in not being rehired in 1991. Although some significance arising from the release is conceivable, Courtney failed to make the requisite evidentiary showing to allow even an inference of discriminatory discharge.

■ Courtney's last piece of direct evidence is a chart of Biosound's 1987–92 hirings. Courtney's theory is that Biosound's hiring practice shows a trend to reduce the age of its workers. The chart, however, seems unilluminating. Of the 59 people hired during 1987 to 1992, 13 were in the protected group. Of the 30 people hired in 1991 to 1992, the period during which Courtney was allegedly a victim of Biosound's discriminatory hiring practice, 7 were in the protected group. Although the newly hired employees in the protected group were all in their forties, Courtney produced no evidence of the applicant pool or any related evidence that substantial numbers of older workers had actually applied for jobs with Biosound. *See Mays v. Chicago Sun–Times,* 865 F.2d 134, 137 n. 2 (7th Cir.1989). Moreover, as the district court correctly recognized, job vacancies will more often than not be filled by employees younger than those who previously occupied the positions, since older employees are constantly moving out of the labor market as younger ones move in. *See Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1224 (7th Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). Although with more information it might have been significant, Courtney's "statistical evidence" does not support an inference of discriminatory hiring practice.

■ Despite the failure to produce any direct evidence of Biosound's discriminatory intent, Courtney has produced sufficient evidence to cast doubt on Biosound's business reasons for its hiring decision. Biosound gave the following reasons for its decision to hire Nethercutt instead of Courtney: (1) Nethercutt has the communication skills Biosound was looking for (Biosound had placed a "high premium" on this characteristic because the poor communication skills of Esaote's outside consultants caused Esaote to consolidate its regulatory affairs with Biosound); (2) Nethercutt has the clinical trial experience required to handle products previously not marketed by Biosound such as Class III invasive devices, whereas Courtney has no clinical trial experience; (3) Courtney's prior job performance was unsatisfactory as evidenced by the mishap in August

1990 and revealed by McKay's and Richardson's reviews of Courtney's files, and (4) the new position is not the same job Courtney held before.

Biosound's president, Richardson, claimed that he chose Nethercutt because Nethercutt had superior communication skills, whereas Courtney's prior performance revealed that Courtney has poor communication skills. Richardson claimed that he had intended to find an individual with good communication skills because the non-approval of Esaote's products was attributed to poor communication and because one of the new manager's most challenging duties would be to "obtain complex technical information from two Italian facilities ... and communicate it to the FDA." Yet, the non-technical requirements listed in the job advertisement included only the ability to work independently, be organized and be attentive to details. The advertisement stated that an ideal candidate must be research-oriented but said nothing about communication skills. Given Biosound's claim that it had placed a "high premium" on finding an individual who could satisfy its "unique communication needs," a reasonable juror could conclude that Biosound would have included this qualification in the job listing had it honestly believed that it was of primary importance for the new position. *See Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1225 (2d Cir.1994) (employer's reason that it did not interview its former manager of internal communications because of her lack of experience in external communications presents genuine issues of material fact as to pretext, where job advertisement did not state that the position would include external communication). This is true particularly because of Biosound's claim that poor communication between Esaote's outside consultants, the FDA and Esaote's employees was the reason that Esaote shifted its regulatory affairs work from outside consultants to Biosound. Thus, reasonable minds could differ as to whether Biosound's emphasis on Nethercutt's communication skills is a pretextual explanation for not re-hiring Courtney. Notably, during Courtney's employment with Biosound, there was never any criticism of Courtney's lack of communication skills under either manage-

ment. Courtney received positive reviews by eight different supervisors, and at least one of the evaluations stated that he had "good rapport with all groups."

Further supporting the inference that Biosound's business reasons lack credence is the fact that the job advertisement also failed to mention the requirement of clinical trial experience, which Biosound now claims to be Nethercutt's overriding qualification over Courtney. Biosound claims that the regulatory affairs manager faces the new challenge of dealing with "clinical trials to assure biocompatability" of their invasive products, and Nethercutt, who had majored in biology and worked as a clinical affairs specialist/coordinator, satisfied this job requirement. Again, this allegedly essential qualification was not mentioned in the advertisement, which provided only that "[t]he ideal candidate will possess a degree in Electrical Engineering or equivalent and be familiar with FDA regulations effecting [sic] medical devices (501 submissions, initial reports, etc.) and GMP regulations." Perhaps the position itself, as Biosound now claims, suggested that clinical trials are an essential element of the job. However, Nethercutt, who began his employment with Biosound about July 1991 as the new manager of regulatory affairs, stated that as of April 1993, he had not been involved in any clinical trials at Biosound and that his FDA submissions had been only for Class II devices, the type for which Courtney had been responsible. At a minimum, the disparity between what Biosound claims to be essential elements of the position and what Nethercutt actually performs on the new job could lead a reasonable juror to disbelieve Biosound's claim that it chose Nethercutt because of Nethercutt's clinical trial experience. *See Gaworski v. ITT Commercial Finance Corp.,* 17 F.3d 1104, 1109 (8th Cir. 1994) (where company claimed that the younger employee, who essentially replaced plaintiff, was more valuable to the company than plaintiff because of his greater computer skills, reasonable minds could conclude that the claim was pretextual where plaintiff demonstrated that the need for computer skills was not mentioned in the new job description, the personnel director had never been

informed of this need and the younger employee was in fact applying his computer skills much less in the new position than before).

■■■■ The third business reason asserted by Biosound is that Courtney's prior job performance was poor. As a preliminary matter, we note that Biosound has stipulated that Courtney is qualified for the new position, since this is one of the elements of the prima facie case. *See Hughes v. Derwinski,* 967 F.2d 1168, 1171 (7th Cir.1992). Thus, while Courtney cannot merely repeat his prima facie case in refuting Biosound's proffered reasons, *see Aungst,* 937 F.2d at 1222; *La Montagne,* 750 F.2d at 1414, Biosound also cannot now argue that Courtney is not qualified for the job. We will interpret Biosound criticism of Courtney's prior work performance as a claim that Courtney was not as qualified as Nethercutt.

Biosound contends that, although Courtney previously had received satisfactory or better performance evaluations, the mishap in August 1990, when he was a consultant, plus subsequent reviews of Courtney's files by McKay and Richardson revealed that Courtney's prior FDA submissions were of poor quality, unorganized and difficult to understand. Specifically, Richardson claimed that he had not previously questioned Courtney's work performance because none of Courtney's supervisors had reviewed Courtney's FDA work and because the products were being approved by the FDA, which to Biosound meant that Courtney was doing a good job. Richardson's claim of ignorance, however, can be called into question by the fact that at least one of Courtney's prior supervisors, Spencer Vawter, had substantive knowledge of FDA procedures. Moreover, several of Courtney's performance evaluations by other supervisors referred to Courtney's "strength" in FDA compliance, and at least one evaluation stated that he was "extremely knowledgeable on regulatory affairs." It is true that Vawter was the company's president before Richardson and some of the evaluations were prepared before the new management took over, but that does not change the reasonable inference that Courtney's regulatory work was a strength,

not a weakness, and Richardson's criticism of his prior performance was an afterthought to justify passing over him. *See Dey v. Colt Construction & Development Co.,* 28 F.3d 1446, 1460 (7th Cir.1994) ("[a]lthough general averments of adequate performance are insufficient to create a factual issue on summary judgment . . . a plaintiff may create an issue of fact by specifically refuting facts that allegedly support the employer's claim of performance deficiencies"). In fact, a reasonable juror could infer that Courtney's good performance was the reason Richardson retained Courtney as a consultant even after he was terminated as an employee.

■■■■ With respect to the mishap in August 1990, Biosound suggests that Courtney's inadequate submission caused the FDA to stop Biosound's introduction of its principal product. Courtney's FDA submission, which allegedly caused "potentially disastrous" consequences to Biosound, concerned an ultrasound imaging device that was impounded by the United States Customs Service. The device had not previously been thought to fall under FDA's regulation of television monitor devices. Richardson retained Courtney to prepare an appropriate letter to the FDA. The letter resolved the immediate problem, but was rejected by the FDA two months later because it did not satisfy certain FDA requirements. According to Richardson, this incident caused Biosound to cease using Courtney as a consultant and contributed to Biosound's decision not to hire him later. However, as Richardson has conceded, the requisite FDA filing for such television monitors was new to the industry and Richardson's own research revealed that other companies, including large companies, had never reported such monitoring devices. Moreover, according to Courtney, he had informed Richardson of his lack of familiarity with cathode ray/radiological emission regulations, but Richardson told him to proceed with his general knowledge. Courtney also claimed that McKay, another consultant, was the one who had conducted the preliminary investigation and had advised Richardson and Courtney to proceed in the manner they did. Although it is certainly true that "an employer can set whatever performance standards he

wants," *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1571 (7th Cir.1989), and courts must be careful not to second guess the employer's assessments of the employee's performance, these assessments cannot be a mask for discrimination. *See id.; Visser,* 924 F.2d at 655; *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir.1989). *See also Shager,* 913 F.2d at 400–01 (plaintiff discharged for allegedly deficient performance survives summary judgment by showing that performance deficiencies were greatly exaggerated and that any deficiencies were offset by superior sales figures). Given the conflicting evidence, a reasonable juror could conclude that Biosound did not honestly believe that Courtney was responsible for the mishap but only claimed that the mishap was Courtney's fault as an excuse not to hire him.

Finally, Biosound emphasizes that the new regulatory affairs manager position was not the same job Courtney had held before, suggesting that Courtney is not as qualified as Nethercutt. It argues especially that while employed by Biosound, Courtney spent only about 20% of his time preparing FDA submissions and that those submissions were for only one type of product, ultrasound devices, most of which were "me too" products that allowed Courtney to rely on existing submissions as well as on the guidelines. Yet, Nethercutt's deposition revealed that all of his prior FDA submissions also involved only "me too" products. Moreover, Nethercutt stated that he did not have experience in either cardiovascular devices or ultrasound products. It was also uncontested that Nethercutt lacked experience with Good Manufacturing Practices (GMP), which appeared to be a significant part of Biosound's regulatory practice because Biosound is required under FDA laws to conduct periodic audits of its GMP compliance. Significantly, Biosound had listed GMP experience in the job advertisement.

It is true that an employer is free to choose an objectively less qualified candidate over a more qualified one. Indeed, a good deal of the arguments on which Courtney relies tend primarily to show that Biosound may merely have made a mistake or exer-

cised poor business judgment in choosing one candidate over the other: Biosound could not have determined in one interview whether Nethercutt had good communication skills; it ignored glaring omissions in Nethercutt's resume; and Nethercutt overstated in his resume his familiarity with medical devices. On the other hand, given Nethercutt's lack of experience in the areas important to the new position and his subsequent training after he was hired, an inference could be drawn that Biosound hired Nethercutt because of his youth and good growth potential. Thus, a reasonable juror could conclude that Biosound's reason for disfavoring Courtney because of his inferior qualifications is pretextual. *Cf. Gallo,* 22 F.3d at 1226 (where company claimed that plaintiff did not have enough experience in the relocation field for the company to retain her and to give her marketing tasks, the fact that the several young employees hired into the marketing department also had no experience in corporate relocation and had little background in writing supports an inference of discrimination).

This court has said that a grant of summary judgment which turns on the issue of discriminatory intent should be approached with "special caution." *Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1313 (7th Cir.1989); *see also Sarsha,* 3 F.3d at 1038. *Accord Batey v. Stone,* 24 F.3d 1330, 1336 (11th Cir.1994); *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1224 (2d Cir.1994); *Johnson v. Minnesota Historical Society,* 931 F.2d 1239, 1244 (8th Cir. 1991); *Thornbrough v. Columbus & G.R.R. Co.,* 760 F.2d 633, 640–41 (5th Cir.1985). Although we are mindful that the ADEA is not a vehicle for reviewing the propriety of business decisions, the materially conflicting evidence in this case, when viewed in the light most favorable to Courtney, raises a question of fact as to the believability, not necessarily the propriety, of Biosound's purported reasons for not rehiring Courtney. Thus, even if the evidence presented by Courtney does not compel the conclusion that Biosound discriminated against him when making its hiring decision, at a bare minimum it suffices to defeat Biosound's summary judgment mo-

tion.[4] The "ultimate question of discrimination" in this case therefore is best resolved by the trier of fact, whose function is to choose among competing inferences and make credibility determinations. *See Hicks,* — U.S. at —, 113 S.Ct. at 2749; *see also Sarsha,* 3 F.3d 1035. Accordingly, we RE-VERSE the district court's grant of summary judgment and REMAND the case for further proceedings.

MANION, Circuit Judge, dissenting.

When Biosound expanded its regulatory affairs department, it published the following advertisement in the newspaper.

> Biosound, Inc., a leader in cardiovascular imaging and electrocardiography has an opportunity for a Manager of Regulatory Affairs in our Indianapolis home office. This position is responsible for assisting the President with regulatory compliance and GMP activities.

> The ideal candidate will possess a degree in Electrical Engineering or equivalent and be familiar with FDA regulations effecting medical devices (501 submissions, initial reports, etc.) and GMP regulations. Candidate must be organized, research oriented, have an attention to detail, and be able to work independently.

> If you are interested in this challenging and rewarding opportunity please submit your resume with salary requirements to: Biosound, Inc., Human Resources Department, 7990 Castleway Drive, Indianapolis, IN 46250.

Company president Gerald Richardson, who at the time was directly responsible for regulatory affairs, selected four finalists from a list of about thirteen valid applicants. Appellant Robert Courtney was one of the final four that Richardson interviewed. But when Nethercutt got the job, Courtney sued, alleging age discrimination. The district court granted summary judgment in favor of Biosound. This court now reverses. Because I would affirm the decision of the district court, I respectfully dissent.

The court correctly states that "the key inquiry here is whether Courtney has produced evidence from which a rational juror could infer that Biosound was untruthful about its proffered reasons for not rehiring Courtney." Opn. at 418. In other words, did Courtney offer evidence showing that a discriminatory reason motivated Biosound's decision not to rehire him, or were Biosound's proffered explanations for not rehiring him unworthy of credence? Opn. at 418. The court correctly knocks most of the wind out of the plaintiff's sails by affirming the district court on several key conclusions concerning alleged direct evidence of discrimination.[1] It is with the court's conclusion—on

4. The dissent argues that where the employee-plaintiff contests the employer's proffered reasons with his own contrary evidence, "[the] district court must still make a judgment as to whether the evidence, interpreted favorably to the plaintiff, would persuade a reasonable jury that the employer had discriminated against the plaintiff. If not, the court must grant the employer's motion for summary judgment." (quoting *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1570 (7th Cir.1989)). Dissent at 427. That standard, however, speaks to the jury's function when a discrimination case is at its trial stage. In *Saint Mary's Honor Ctr. v. Hicks,* the Supreme Court held that "[t]he fact-finder's disbelief of the reasons put forward by the defendant ... may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination." — U.S. —, —, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993) (footnote omitted) (emphasis in original). Implicit in the Court's holding is that once the plaintiff has cast doubt on the employer's proffered reasons, the issue of wheth-

er the employer had discriminated against the plaintiff is to be determined by the jury not the court. Thus, following the Supreme Court's teaching in *Hicks,* this court has clarified that in order to survive a summary judgment motion, the plaintiff need only " 'produce evidence from which a rational fact-finder could infer that the company lied' about its proffered reasons" for the adverse employment action. *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120 (7th Cir. 1994); *see also Dey,* 28 F.3d 1446 at 1461; *Robinson,* 23 F.3d at 1162–63. Of course, the plaintiff bears the ultimate burden of proving that age was the determining factor in the employer's action should the case proceed to trial.

1. The court correctly concluded that (1) Garrett's interview notes referring to Nethercutt as "young"; (2) management discussions of Courtney's age and health before his earlier termination; (3) the request for Courtney to sign a release; and, (4) a chart showing 1987–1992 hiring trends, were not valid bases for attributing discriminatory intent to Biosound. Opn. at 418–20.

pretext—that Courtney "has produced sufficient evidence to cast doubt on Biosound's reasons for its hiring decision" that I must disagree.

"[A] plaintiff may prove discrimination either directly, by proving that age was a determining factor in the employer's decision, or indirectly, by proving that the employer's proffered explanation is pretextual." *Perfetti v. First Nat. Bank of Chicago*, 950 F.2d 449, 450 (7th Cir.1991). As noted, the court correctly concludes that Courtney failed to produce any direct evidence of discrimination. Thus, Courtney must produce evidence showing pretext to avoid summary judgment.

"To establish pretext, an employee must ultimately show by a preponderance of the evidence either '(1) that the employer was more likely motivated by a discriminatory reason, or (2) that the employer's proffered reason is unworthy of credence.'" *McCoy v. WGN Cont. Broad. Co.*, 957 F.2d 368, 372 (7th Cir.1992) (quoting *Johnson v. University of Wisconsin–Milwaukee*, 783 F.2d 59, 63 (7th Cir.1986)). In this case, Courtney seeks to prove that Biosound's proffered reasons for not hiring him were unworthy of credence. For summary judgment purposes, Courtney must therefore " 'produce evidence from which a rational fact finder could infer that the company lied' about its proffered reasons for his dismissal." *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1124 (7th Cir.1994) (quoting *Shager v. Upjohn Co.*, 913 F.2d 398, 401 (7th Cir.1990)).

Courtney's production falls well short of demonstrating that Biosound's proffered reasons for hiring Nethercutt are unworthy of credence. Biosound asserted, among other things, that it hired Nethercutt instead of Courtney because Nethercutt had superior communication skills. In support of this assertion, Biosound pointed to evidence that Nethercutt demonstrated excellent communication skills in writing samples and during his job interview, and that his employment references supported this conclusion. Biosound also presented evidence that demonstrated that Courtney's communication skills were more negative. Specifically, Biosound presented evidence that FDA filings written by Courtney were of poor quality, unorganized, and that it was difficult to read and determine the object of the submissions.

The court concludes that this proffered reason was pretextual, because "during Courtney's employment with Biosound, there was never any criticism of Courtney's lack of communications skills under either management. Courtney received positive reviews by eight different supervisors, and at least one of the evaluations stated that he had 'good rapport with all groups.' " Opn. at 421. Courtney's evidence could raise an inference that Biosound was mistaken in its assessment of Courtney's skills, as compared with Nethercutt. But that is not enough. *Weihaupt v. American Medical Ass'n*, 874 F.2d 419, 429 (7th Cir.1989). "As we have stated in the past, we again emphasize: [W]e do not sit as a super-personnel department that re-examines an entity's business decisions." *Id.* (internal citations omitted). Thus, however much emphasis Biosound puts on communication skills is a business decision, good or bad. Even if Biosound misjudged Nethercutt and Courtney's relative communications skills, such an alleged miscalculation is insufficient to present a jury question as to pretext. *Id.* And where such evidence is the only evidence of pretext, summary judgment is appropriate. *Konowitz v. Schnadig Corp.*, 965 F.2d 230, 234 (7th Cir.1992) (evidence that employer believed one candidate's communication abilities were better than plaintiff's was a basis for summary judgment in favor of employer even where plaintiff claims this reason is a pretext for age discrimination).

The court also reasons that since the job advertisement failed to list "communication skills" as one of the preferred qualifications, reliance on this factor in hiring Nethercutt instead of Courtney created an inference of pretext. In considering a motion for summary judgment, however, a "court is not required to evaluate every *conceivable* inference which can be drawn from evidentiary matter, but only reasonable ones." *Parker v. Federal Nat. Mortg. Ass'n*, 741 F.2d 975, 980 (7th Cir.1984). Moreover, the inferences must be legitimate and justifiable. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106

S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). It is unreasonable to conclude that a proffered reason for selecting one candidate over another is pretextual merely because a two-inch by three-inch advertisement with limited wordspace failed to mention that characteristic. *See Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1571 (7th Cir.1989) ("The employee doesn't get to write his own job description. An employer can set whatever performance standards he wants, provided they are not a mask for discrimination on forbidden grounds such as race or age."). *Cf. Wrenn v. Gould,* 808 F.2d 493, 502 (6th Cir.1987) (variation between advertised job description and proffered reason did not demonstrate pretext). The fact that the job advertisement did not include "communication skills" and "clinical experience" as preferred qualifications does not support a reasonable inference of pretext. After all, Richardson interviewed only four of the fourteen applicants who made the list for consideration. If Richardson had some preordained excuse (age?) for not rehiring Courtney, why would he interview him? Courtney obviously met some of the qualifications. In fact, we can assume that each of the final four at least claimed the advertised preferences of being "organized, research oriented ... hav[ing] an attention to detail and ... able to work independently." If ability to communicate emerged as the deciding factor in the interviews, so be it. That factor does not produce an inference of a pretext to cover up age discrimination.

Moreover, Biosound offered additional reasons for its selection of Nethercutt over Courtney. Specifically, Biosound asserted that it selected Nethercutt instead of Courtney because it became aware of problems concerning work Courtney had previously performed for Biosound. In this regard, Biosound presented evidence that an outside consultant had reviewed Courtney's past work and determined that FDA filings Courtney prepared were of poor quality, unorganized, and that they were difficult to read and comprehend. Biosound also presented evidence that it was necessary to hire a consultant to correct deficiencies in Courtney's work. Obviously this was not a totally disqualifying factor since Richardson interviewed him, but the information would legitimately weigh in the balance.

The court rejects these proffered reasons, concluding that there is a reasonable inference that criticism of Courtney's "prior performance was an afterthought to justify passing over him." Opn. at 422. In support of this inference, the court cites to performance evaluations which referred to Courtney's knowledge of regulatory affairs as a strength. These performance evaluations, all of which were prepared in years between 1979 and 1989, do not call into question Biosound's proffered reason. The evidence Biosound presented demonstrated that it did not learn of problems with Courtney's prior work until the consultant discovered them in 1991—after Courtney had left the company. Where an employer advances specific reasons for an employment decision, rebuttal evidence should focus on those reasons. *Lenoir v. Roll Coater, Inc.,* 13 F.3d 1130, 1133 (7th Cir.1994). Courtney has failed to present any evidence calling into doubt Biosound's reliance on subsequently discovered flaws in Courtney's work. It is simply unreasonable to infer from prior job evaluations that reliance on such later discovered flaws is pretextual, especially after subsequent interviews displayed disparate communication skills. *See Weihaupt,* 874 F.2d at 428–29 (evidence of prior job evaluations is insufficient to create genuine issue of material fact as to whether employee's lack of ability was pretextual reason for employment discrimination).

Courtney also failed to present any evidence rebutting Biosound's contention that it hired another consultant to redo an FDA application that he prepared inadequately. The court addresses this issue by focusing on evidence that tends to show that it was not Courtney's fault that the application was rejected. The court then reasons that evidence creates an inference that "Biosound did not honestly believe that Courtney was responsible for the mishap but only claimed that the mishap was Courtney's fault as an excuse not to hire him." Opn. at 423. This conclusion is unsupported by the law of this circuit. This court has consistently held that evidence which calls into question an employee's

fault for deficient performance is insufficient to create a genuine issue of material fact as to whether the employer actually fired the employee for that deficient performance. *Anderson,* 13 F.3d at 1125 (evidence that an "employee's performance is satisfactory because he was not entirely responsible for several admitted mishaps, does not create a material issue of fact" as to pretext); *Karazanos v. Navistar Intern. Transp. Corp.,* 948 F.2d 332, 337–38 (7th Cir.1991) (evidence that performance problems were fault of another is insufficient to create factual issue as to whether poor performance was pretext for employment decision); *Weihaupt,* 874 F.2d at 429 (evidence putting into question whether employee's deficient performance was his fault is insufficient to create a genuine issue of material fact as to pretext). Therefore, in this case, Courtney cannot avoid summary judgment by presenting evidence that he was not at fault for the inadequate FDA application.

Where a plaintiff claims that an employer's proffered reason for an employment decision is "unworthy of credence" it is tempting to think that only a jury—the judge of credibility—can consider that issue. *Perfetti v. First Nat. Bank of Chicago,* 950 F.2d 449, 452 (7th Cir.1991). That is not the law, however, and contrary to rumor, this court has not gone so far as to imply that defendants seeking summary judgment on a question of pretext need not apply. *Id.* Rather, even if the plaintiff rebuts the employer's rebuttal—"not in the sense of demolishing it but in the sense of contesting it with his own, contrary evidence"—"[the] district court must still make a judgment as to whether the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff. If not, the court must grant the employer's motion for summary judgment." *Palucki,* 879 F.2d at 1570. *See also Karazanos,* 948 F.2d at 338 ("Summary judgment is designed to head off a trial if the opposing party 'does not have a reasonable prospect of prevailing before a reasonable jury—that is, a jury that will base its decision on facts and law, rather than on sympathy or antipathy or private notions of justice.'") (quoting *Palucki,* 879 F.2d at 1572). *Perfetti,* 950 F.2d at 452

("unworthy of credence" claim must go to the jury only if substantial evidence supports such a finding). In this case, the evidence, even when considered in the light most favorable to Courtney, fails to create a reasonable inference that Biosound did not honestly believe in the reasons it offered for hiring Nethercutt instead of Courtney. Accordingly, Biosound is entitled to summary judgment on Courtney's age discrimination claim. I would therefore affirm the district court's grant of summary judgment.