**Jerry KIRKPATRICK, Plaintiff,**

v.

**GENERAL ELECTRIC, a New York corporation; and Tom Lime, Defendants.**

**Civil Action No. 96–40128.**

United States District Court,
E.D. Michigan,
Southern Division.

May 7, 1997.

E. Michael Morris, Cherie B. Ritter, Morris & Doherty, Birmingham, MI, for Plaintiff.

David B. Calzone, Butzel Long, Ann Arbor, Thomas F. Cooke, II, Baker & Hostetler, Cleveland, OH, for Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Before the court is defendants', General Electric and Tom Lime, motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56(c), filed on March 14, 1997. Plaintiff, Jerry Kirkpatrick ("Kirkpatrick"), filed a timely response on April 8, 1997.[1] Pursuant to Local Rule 7.1(e)(2) (E.D.Mich. Nov. 7, 1994), this court has decided to dispense with oral argument and will decide the instant motion on the briefs filed. For the reasons stated below, this court will grant defendants' motion for summary judgment.

#### Background

Kirkpatrick, who was born in 1943, began working for General Electric Lighting ("GEL") in 1967. He was promoted to district sales manager ("DSM") in 1981 and became a regional sales manager ("RSM") in

---

1. The parties agreed, by stipulation approved by this court, to extend the dispositive motion deadline to March 14, 1997 and to extend plaintiff's response time by one week.

1990. In September, 1993, at the age of 50, Kirkpatrick was terminated.

Kirkpatrick contends that prior to his termination, he received favorable job evaluations. Specifically, Kirkpatrick points out that in his 1992 job evaluation, which occurred two months prior to his termination, his supervisor, Tom Lime ("Lime"), identified Kirkpatrick's strengths as: "Intelligent," "Good oral communication," "Analytical," "Interpersonal skills," "Knowledge of business," and "Respected by customers/peers." Moreover, Lime stated that "Jerry continues to improve his leadership skills and has a positive performance trend" and that Kirkpatrick has a "[s]trong record of consistent success in every Sales (sic) assignment," that he "[q]uickly assess[es] situations, [and] formulate[s][a] winning strategy."

GEL, on the other hand, contends that Kirkpatrick's performance prior to termination was unexceptional. They also point to the 1992 evaluation wherein it states that 1992 had been "a very disappointing year" for Kirkpatrick and that his sales region had missed its sales objectives by twenty-five percent. They note Kirkpatrick's admission that he had to improve his "strategic thinking," which included "improv[ing] internal communications," and that he needed to improve his "business judgment," and "better utilize company resources." Lime noted that Kirkpatrick needed to "continue improving [his] positive attitude" and "more actively involve Nela[2] support functions." The evaluation concluded that Kirkpatrick would "continue in present assignment."

GEL also points to one particular incident in which Kirkpatrick and one of his sales persons made an unauthorized price quotation which resulted in GEL losing $750,000.

Kirkpatrick was told by Lime that his termination was not performance related but rather that management desired new management, a new direction and a different style of management. Kirkpatrick was subsequently replaced by Jim Connolly ("Connolly"), who was 33 years old.

GEL contends that in 1993 GEL management determined that it was going to upgrade the quality of its sales force. Lime was asked to review his sales force and identify his weakest performers. The reasons for the upgrade included intensified global competition and more demanding customer expectation of GEL's sales organization.

For the review, Lime developed a chart ranking all eleven RSMs. The chart incorporated both qualitative and quantitative criteria, including the names of the managers, the years the managers were in DSM and RSM positions, salary, a promotion code and an ultimate ranking. The names on the chart were listed by age. Lime, however, stated that he did so to make certain that he was taking the weakest performers, rather than the oldest people, out of the organization. Based on these qualitative and quantitative criteria, Lime ranked Kirkpatrick tenth out of the eleven RSMs. Of the RSMs retained, six were older than Kirkpatrick.

Upon his termination, Kirkpatrick was told that there might be a company position available as a senior account manager. Kirkpatrick claims that he informed Lime that he would be interested in such a position but he was never, in fact, offered that position. Instead, Kirkpatrick claims that he was instructed to contact a placement agency to locate employment outside the company and was provided with severance benefits.

After several months of not being able to locate another sales management position, Kirkpatrick purchased a restaurant business in June, 1994 which he operates today.

## Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear

---

**2.** Nela Park in Cleveland, Ohio, serves as the headquarters for the Lighting business.

the burden of proof at trial. *Martin v. Ohio Turnpike Commission*, 968 F.2d 606, 608 (6th Cir.1992); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration*, 14 F.3d 1143, 1148 (6th Cir.1994). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland*, 988 F.2d 649 (6th Cir. 1993).

Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986):

> There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991).

### Analysis

■ To establish a prima facie case of age discrimination, plaintiff must demonstrate that: (i) he was a member of a protected class, (ii) he was subjected to an adverse employment action, (iii) he was qualified for the position, and (iv) he was replaced by a younger person. *Simpson v. Midland–Ross Corp.*, 823 F.2d 937, 940 (6th Cir.1987) (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)).

■ It is conceded that plaintiff was a member of a protected class and was replaced by a younger person. Defendants, however, contend that plaintiff was not adversely terminated nor was he qualified for the position. Defendants argue that plaintiff's discharge was not "adverse" since plaintiff elected not to pursue another employment opportunity within GEL. Plaintiff, on the other hand, maintains that while mention was made of another position within GEL, he was never actually offered such a position. This court, when considering a motion for summary judgment must, of course, view the facts in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Accordingly, this court finds that plaintiff was subjected to an adverse employment action.

■ Defendants also maintain that plaintiff was not qualified for the position since the job requirements for RSMs were changing. Plaintiff, of course, contends that he was qualified as evidenced by, *inter alia*, his past performance evaluations. Again, this court must presume, on this motion for summary judgment, that plaintiff was qualified to hold the position. Accordingly, this court finds that plaintiff has made out a prima facie case.

■ Once plaintiff has established a prima facie case of age discrimination, the burden of production shifts to defendants to "rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Defendants have met this burden by showing that GEL did not believe plaintiff had the skills necessary to meet the challenges posed by increased competition and customer demands. Specifically, Lime felt that plaintiff lacked leadership skills, as evidenced by his inability to get people in his region promoted. Moreover, Lime was dissatisfied with the manner in which plaintiff had handled problems in the Detroit area, in particular, the unauthorized price quote which resulted in a $750,000 loss to GEL. These nondiscriminatory explanations for plaintiff's termination "destroy[ ] the legally mandatory inference of discrimination arising from the plaintiff's initial evidence." *Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10.

The Sixth Circuit, in construing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and *Burdine, supra*, held that once an employer has come forward with a nondiscriminatory reason for firing the plaintiff, the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994). The *Manzer* court went on to say:

To make a submissible case on the credibility of his employer's explanation, the plaintiff is 'required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge.' *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir.1993) (emphasis added and quotation marks omitted). The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.*, that they are 'factually false.' (citation omitted). The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed 'a suspicion of mendacity.' *Hicks*, 509 U.S. at 511, 113 S.Ct. at 2749. As *Hicks* teaches, such a showing permits, but does not require, the factfinder to infer discrimination from the plaintiff's prima facie case.

*Id.* at 1084 (emphasis in the original).

In the present case, plaintiff does not present any evidence that the defendants' explanations were "factually false." In fact, plaintiff testified that he did not doubt that Lime received a mandate to upgrade the consumer sales organization.[3] Nor does plaintiff introduce any evidence that other, but younger, employees were not fired even though they engaged in substantially identical conduct.

---

**3.**  Q: [Y]ou heard [Mr.Lime's] testimony that he received a mandate to upgrade the consumer sales organization, correct?
A: Yes.
Q: As you sit here today, do you have any reasons to doubt that Mr. Lime received that mandate?

A: No.
Q: So you have no facts contrary to Mr. Lime's testimony on that point?
A: No.

By contrast, of the eleven RSMs evaluated and ranked by Lime (of which Kirkpatrick was ranked tenth), six of those retained were older than plaintiff while two were younger. Moreover, Lime himself, is five years older than plaintiff. Accordingly, the sufficiency of plaintiff's rebuttal must be evaluated in terms of the second showing discussed above. In discussing the second showing, the Sixth Circuit stated:

> The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup.

*Manzer,* 29 F.3d at 1084 (emphasis in the original)

In the instant case, plaintiff directs this court, essentially, to three pieces of circumstantial evidence of age discrimination.[4] First, plaintiff argues that GEL had a discriminatory policy which targeted older employees, rather than younger employees, for elimination. Plaintiff relies on his own affidavit, his deposition testimony, and the fact that during the period of 1993 to 1996, six out of thirteen RSMs were removed from their positions and that five of those six were replaced with younger managers.

■ However, plaintiff's conclusory allegations of discrimination are, however, without more, insufficient to withstand a motion for summary judgment. *See Mitchell v. Toledo Hosp.,* 964 F.2d 577, 585 (6th Cir.1992) (stating "rumors, conclusory allegations and sub-

jective beliefs ... are wholly insufficient evidence to establish a claim of discrimination as a matter of law.") Moreover, plaintiff's use of statistical argument has been rejected by the Sixth Circuit:

> [Plaintiff] used the departure of only seventeen people as a basis for his statistical argument. Not only is reliance upon such a small sample suspect, [citation omitted], but [plaintiff] included all who left the company during the relevant period even though they might have retired early under an incentive plan or might have accepted jobs elsewhere. Also, we have no idea whether seventeen people constituted a significant percentage of [defendant's] workforce even if all seventeen were within the protected age group and involuntarily left the company. Without comparing employee discharges from the protected group and from a younger group or comparing retention levels between the two groups, [plaintiff] did not even attempt to place his figures in a relevant context so as to make them meaningful.

*Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 943 (6th Cir.1987). Nor is the fact that the RSMs were replaced by younger individuals probative of discrimination: "A natural consequence of the aging process is that younger employees are constantly replacing older employees as younger persons enter the job market and older persons leave." *Eliel v. Sears. Roebuck and Co.,* 150 Mich. App. 137, 141, 387 N.W.2d 842 (1985).

Second, plaintiff points to the fact that Lime used an "age chart," i.e. ranked the eleven RSMs by age, in determining which RSMs to remove. Furthermore, plaintiff contends, those RSMs who were over forty years old were designated as not promotable.

■ Plaintiff, first of all, misconstrues this "evidence" since two of the RSMs, one age 51 (older than plaintiff) and one age 47, were designated as very promotable. In any event, "the fact that the list[ ] used in the ranking process identified employees' ages is ... of no import. 'Knowledge of a worker's

---

4. Plaintiff contends that his previous job performance and successful career should be used as circumstantial evidence of age discrimination. This "qualification" evidence was, however, used

to establish plaintiff's prima facie case and has "no independent probative value on the issue of illegal discrimination." *Manzer,* 29 F.3d at 1085.

age does not support an inference of age discrimination....'" *Signore v. Amoco Corp.,* 1994 WL 401100, *7 (N.D.Ill.1994) (quoting *Gustovich v. AT & T Communications, Inc.,* 972 F.2d 845, 849 (7th Cir.1992)). The cases relied upon by plaintiff are inapposite since those cases involved additional evidence of discrimination aside from an "age chart." Here, there is no such other evidence. Moreover, Lime has testified that he did not consider age in making his decision. In fact, Lime stated that he noted the RSMs' ages to ensure that he was not making a decision to terminate based on age. Plaintiff has not produced any evidence to refute this denial. *See Wiggins v. Firestone Tire & Rubber Co.,* 1989 WL 60089, **2 (6th Cir. June 7, 1989) (where plaintiffs were unable to refute defendants' denial that "age charts" were used in the decision to terminate them, the Sixth Circuit stated "that the mere existence of these charts does not establish that [defendant] fired [plaintiffs] on the basis of age.") (unpublished opinion).

Third, plaintiff points to the fact that defendants asked him to sign a release of discrimination claims as part of the proposed severance package. Plaintiff relies on *Cassino v. Reichhold Chemicals, Inc.,* 817 F.2d 1338 (9th Cir.1987), wherein the Ninth Circuit held that a contemporaneous termination agreement which includes a release of potential discrimination claims in exchange for a severance pay package are considered probative on the issue of discrimination. *Id.* at 1342. There is, not surprisingly, a difference of opinion on this issue. For instance, the Seventh Circuit, in *Courtney v. Biosound, Inc.,* 42 F.3d 414 (7th Cir.1994), when faced with the same issue of whether a release evidences discriminatory intent stated:

> ... this court has said that no inference of guilt can be drawn from a company's sensitivity to its potential liability under the age discrimination law when discharging a protected older worker, unless the innocuous

evidence of age awareness' is made significant by other evidence that would give rise to such an inference. *See Partington v. Broyhill Furniture Industries, Inc.,* 999 F.2d 269, 271 (7th Cir.1993) (employee's release of age discrimination claims coupled with employer's 'purging' of the files of its terminated employees—the very files that would be expected to contain the evidence most relevant to such a suit, gave rise to inference that employer was destroying incriminating evidence when most of those employees whose files were destroyed were over the age of 40 and were potential age discrimination plaintiffs)

*Id.* at 420. *See also Maidenbaum v. Bally's Park Place, Inc.,* 870 F.Supp. 1254, 1267 n. 23 (D.N.J.1994) (stating that "release is not probative of an intent to discriminate....") The Sixth Circuit has not spoken on this issue.

This court, however, is not inclined to follow the *Cassino* case.[5] Moreover, as discussed above, plaintiff has not offered any other evidence of age discrimination which would permit a trier of fact to draw an inference that the release itself was evidence of discrimination.

Accordingly, plaintiff has failed to rebut defendants' legitimate non-discriminatory reason for terminating him.[6]

### *ORDER*

**THEREFORE, IT IS HEREBY ORDERED** that, for the reasons stated above, defendants', General Electric and Tom Lime, motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56(c), is **GRANTED.**

**SO ORDERED.**

### *JUDGMENT*

This action came before this court, the Honorable Paul V. Gadola, District Judge presiding, and the issues having been fully

---

5. Notably, in a latter unpublished opinion, the Ninth Circuit acknowledged that the ADEA specifically permits employers to ask its terminated employees to waive potential ADEA claims. *Pasco v. Arco Alaska, Inc.,* 1996 WL 118521, **2 (9th Cir. February 9, 1996) (citing 29 U.S.C. § 626(f)(1)).

6. Since this court finds that plaintiff has failed to make out a case of age discrimination it need not address defendants' alternative argument that plaintiff failed to mitigate his damages.

presented and the court being fully advised in the premises, and a decision having been duly rendered,

**IT IS HEREBY ORDERED AND ADJUDGED** that the plaintiff, Jerry Kirkpatrick, take nothing in this action against the defendants, General Electric and Tom Lime, and that the claims contained in his February 28, 1996 removed complaint are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that the clerk of the court serve a copy of this judgment by United States mail on counsel for the parties named in the caption above.

SO ORDERED.